STATE

v.

Thomas ALEGRIA et al.

STATE

v.

Peter HALLOCK.

No. 81–334–Appeal.

Supreme Court of Rhode Island.

Aug. 10, 1982.

Dennis J. Roberts, II, Atty. Gen., Melanie Wilk Spencer, Sp. Asst. Atty. Gen., for plaintiff.

Joseph G. Kinder, Providence, Joseph W. Monahan, III, Boston, Mass., for defendants.

OPINION

BEVILACQUA, Chief Justice.

This case is before the court by order of a justice of the District Court seeking certification, pursuant to G.L.1956 (1969 Reenactment) § 9–24–27, of the following question concerning the constitutionality of G.L.1956 (1979 Reenactment) § 28–10–13.1.

"Whether R.I.G.L. § 28–10–13.1 which reads:

'Police and fire services.—Recognizing that police and fire services provided by a municipality during a labor dispute are a public function, and recognizing further the need to secure the rights and safety of all parties to a labor dispute and the rights and safety of the general public, it shall be unlawful for any municipality or agent, or servant, or employee of a municipality within the state to accept directly or indirectly from any person, partnership, firm, corporation, or labor union, or any officer or agent thereof, involved in a labor strike or lockout compensation or reimbursement for any expense including salaries incurred by such person, partnership, firm, corporation or labor union, or any officer or agent thereof, in connection with the providing of police or fire services during a labor strike or lockout and in connection therewith.'

(1) is unconstitutionally vague in that it does not provide adequate warning to a person of ordinary intelligence that his conduct is illegal by common understanding and practice; specifically:

(a) whether its proscription applies to municipal police officers paid by a corporation [which is a party to a labor dispute] to act as security guards at a strike site during their off-duty hours.

(b) whether municipal police officers working for compensation in their off-duty hours as security guards hired by a corporation which is a party to a labor dispute are providing 'police services' which are prohibited by the statute."

Although a statement of facts was not submitted with the certification order from the District Court, a reading of the briefs reveals the following facts.

On February 5, 1981, employees at Gripnail Corporation (the corporation), located in Bristol, Rhode Island, agreed by majority vote to become members of the Laborers' International Union of North America (the union). The corporation challenged the result of the election and appealed to the National Labor Relations Board. That appeal is still pending.

On April 5, 1981, the employees voted to strike and began picketing the following day. Shortly thereafter, incidents of violence and vandalism relating to the strike were reported to the police. As a result of these incidents, the corporation, through its president, Peter Hallock, hired off-duty police officers of the town of Bristol to act as security guards. These officers were paid directly by Hallock at the end of each officer's work shift for services rendered as security guards. The officers wore their police uniforms while employed at the corporation, and some of them were armed.

On or about April 25, 1981, the union filed a complaint with the Attorney General alleging that the corporation was violating § 28–10–13.1. However, on May 7, 1981, a spokesman for the Attorney General issued a statement to the Bristol Phoenix that there was no violation of the statute as long as moonlighting officers did not exercise their police powers while serving as security guards.

On May 13, 1981, one of the strikers assaulted an off-duty officer serving as a security guard; and the officer then arrested the striker. Subsequently, defendants, seventeen named Bristol police officers and Peter Hallock, were charged with violating §§ 28–10–13.1 and 28–10–14.[1]

The defendant police officers argue that the act as it applies to them is unconstitutionally vague. The defendant Peter Hallock incorporates this argument and also argues that the statute is inapplicable to him because it only proscribes acceptance of

1. General Laws 1956 (1979 Reenactment) § 28–10–14, which is the penalty provision, provides as follows:

"Any person, partnership, agency, firm or corporation violating §§ 28–10–10, 28–10–11, 28–10–12, 28–10–13 or 28–10–13.1 of this chapter shall be guilty of a misdemeanor and upon conviction thereof shall be sentenced to pay a fine of not more than five hundred dollars ($500) or to suffer imprisonment for a term not exceeding one (1) year, or both, at the discretion of the court."

compensation for police services, not the payment therefor. The state contends that the act covers situations in which off-duty police officers serve as security guards during a labor dispute because the act forbids municipal employees from receiving compensation for furnishing police services to private corporations during such a dispute. The state contends that off-duty police officers do not lose their status as municipal employees when they provide such security services.

■ The due-process clause of the Fourteenth Amendment requires that a criminal statute be declared void when it is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926); *see Colautti v. Franklin*, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). Thus, the state may not hold an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954); *see Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *State v. Authelet*, 120 R.I. 42, 385 A.2d 642 (1978); *State v. Levitt*, 118 R.I. 32, 371 A.2d 596 (1977). Therefore, the state has an obligation to frame its criminal statutes so as to inform adequately the persons to whom it is addressed of the type of conduct that is prohibited. *Cline v. Frink Dairy Co.*, 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927).

In determining whether a person has fair warning of what a statute requires or forbids, we look at whether or not the words and phrases employed in the statute provide adequate warning to a person of ordinary intelligence that his conduct is illegal by common understanding and practice. *See Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Cline v. Frink Dairy Co., supra; State v. Authelet, supra; State v. Milne*, 95 R.I. 315, 187 A.2d 136 (1962).

The language in question in § 28–10–13.1 is as follows:

> "[I]t shall be unlawful for any municipality or agent, or servant, or employee of a municipality within the state to accept directly or indirectly from any person * * * involved in a labor strike * * * * compensation * * * * in connection with the providing of police or fire services during a labor strike * * *."

■ From a reading of the statute, it is unclear whether security guard services provided by off-duty police officers to a private corporation during a labor dispute are allowed, restricted, or forbidden. Specifically, the statute expressly applies to an agent, servant, or employee of a municipality. However, the statute does not state whether an off-duty police officer is such an agent, servant, or employee.[2] Moreover, the statute essentially forbids a municipality from accepting compensation for providing services of a public nature (police and fire services) to a private concern during a labor dispute. However, it is unclear from the language of the statute whether private security-guard services provided by off-duty police officers would be considered "police services" and, therefore, a function of the municipality. For the foregoing reasons, we find the statute vague in regard to what conduct is proscribed and therefore constitutionally infirm.[3]

---

2. We note that jurisdictions are divided on whether off-duty police officers privately employed as security guards or in a similar capacity are agents, servants, or employees of a municipality. *See, e.g., People v. Corey*, 21 Cal.3d 738, 147 Cal.Rptr. 639, 581 P.2d 644, 147 Cal. Rptr. 639 (1978); *State v. Coleman*, 224 Kan. 447, 580 P.2d 1329 (1978); *Steward v. State*, 527 P.2d 22 (Okla.Crim.App.1974); *Wood v. State*, 486 S.W.2d 771 (Tex.Crim.App.1972).

3. Even if we were to find the statute constitutional, the statute would not apply to defendant Peter Hallock. The statute forbids municipal employees from receiving compensation for private police services rendered. It does not, however, forbid persons from compensating municipal employees for such services.

Accordingly, we answer the first part of the question certified to us in the affirmative[4] and order the papers in the case returned to the District Court with our decision endorsed thereon.

---

4. Because we answer the first part of the certified question in the affirmative, we see no need to address subparts (a) and (b).