**STATE**

v.

**Angelo PADULA.**

No. 87–480–C.A.

Supreme Court of Rhode Island.

Dec. 15, 1988.

James E. O'Neill Atty. Gen., Annie Goldberg, Asst. Atty. Gen., for plaintiff.

Paul J. DiMaio, Grilli, DiMaio & Berson, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before the Supreme Court on an appeal by the defendant Angelo Padula. On May 22, 1987, a Superior Court jury found the defendant guilty of three violations of the Uniform Controlled Substances Act, G.L.1956 (1982 Reenactment) § 21–28–4.01, as amended by P.L. 1985, ch. 154, § 1 (the act).[1] The charges consisted of three counts of unlawful delivery of cocaine. The defendant appeals from the motion justice's ruling that the act is constitutional and from the trial justice's failure to sanction the state for violations of Rule 16 of the Superior Court Rules of Criminal Procedure. In addition, defendant maintains that the prosecutor made improper remarks, the jury instructions were prejudicial, and cross-examination of a state witness was unfairly limited. The facts relevant to these issues follow.

The defendant was charged by information with three violations of § 21–28–4.01(A)(2)(a). Prior to trial, defendant filed a motion to dismiss on the grounds that the state had failed to allege drug dependency. The defendant later amended the motion, asserting that the act was unconstitutionally vague because it failed to inform him of "the nature and cause of the accusation" against him. The defendant also requested that four questions of law regarding construction of the act be certified to this court.

The motion justice denied defendant's motion to dismiss, finding that the statute was not unconstitutionally vague. She also declined to certify the questions. Although a drug-dependent person is subject to lesser penalties under the statute, the justice noted that the state may choose to charge a nondependent offender under § 21–28–4.01(A)(2)(a), thereby subjecting a defendant to lesser penalties. She concluded that the state was not required to prove drug dependency as an element of the offense under either section of the act.

Warwick constable Danielle Maynard testified at trial that she worked undercover for a narcotics operation with the code name Operation Brown Eyes from August to December 1985. She stated that in conjunction with the operation she would purchase different drugs from "known suspects." Maynard testified that she purchased cocaine from defendant on three separate occasions (November 7, 8, and 14, 1985). Two of the purchases took place at defendant's home and the third at a private West Warwick club. At each purchase law-enforcement officials provided surveillance for Maynard. Originally Maynard testified that after each purchase she completed a report, inserting the same piece of paper into the typewriter to continue the report. She stated that she signed this report on November 14, 1985, after the

---

1. General Laws 1956 (1982 Reenactment) § 21–28–4.01, as amended by P.L.1985, ch. 154, § 1, of the Uniform Controlled Substances Act states in pertinent part:

   "(A) Except as authorized by this chapter, it shall be unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance.

   (1) Any person who is not a drug dependent person, as defined in § 21–28–1.02(15), who violates this subsection with respect to a controlled substance classified in schedule I or II, except the substance classified as marijuana, is guilty of a crime and upon convic-

   tion may be imprisoned to a term up to life, or fined not more than two hundred and fifty thousand dollars ($250,000), or both.

   (2) Any person, except as provided for in subsection (A)(1) who violates this subsection with respect to:

   (a) a controlled substance classified in schedule I or II is guilty of a crime and upon conviction may be imprisoned for not more than thirty (30) years, or fined not more than one hundred thousand dollars ($100,000) or both * * *."

   Cocaine is listed under schedule II, § 21–28–2.08(b)(4).

final purchase. When defense counsel questioned her further, she retracted her earlier statement, acknowledging that she had actually signed the report on January 9, 1986.

Following Maynard's testimony, Norman Phelps, a Division of Drug Control inspector, testified that he provided surveillance for Maynard on the eighth and fourteenth of November. Phelps pointed out on cross-examination that the police narrative given to defendant during discovery contained inaccuracies. Therefore, during cross-examination of Phelps, defendant learned for the first time that there were three additional police reports written by Maynard concerning the events of November 7, 8, and 14, which reports were dated December 13, 1985. The defendant never received these reports during discovery.

Upon hearing Phelps's testimony, defendant moved to dismiss for lack of disclosure. The trial justice denied the motion, holding that Maynard's December 13, 1985 reports were a verbatim recitation of the material that had been produced in discovery. Failing on the motion to dismiss, defense counsel made a motion to strike Maynard's testimony, which likewise was denied.

After the close of the state's evidence, defendant moved to dismiss the information for prosecutorial misconduct. Counsel for defendant argued that there were crucial differences between the summaries of the statements of the state's witnesses and their testimony at trial. He also cited the nondisclosure of Maynard's reports as evidence of the misconduct. The motion was denied.

Before presenting any witnesses, defendant sought to introduce evidence that he was not drug dependent. The trial justice granted the state's motion in limine to exclude the proffered evidence.

The defendant then presented his case, at the close of which he filed two motions to dismiss the indictment. The first motion was based upon the alleged "consistent badgering" of defense counsel by the trial justice. The second motion was characterized as one for judgment of acquittal in which defendant's counsel reiterated that he interpreted § 21–28–4.01(A)(2)(a) to require that the state demonstrate that defendant was drug addicted. Both motions were denied. Commenting on defendant's interpretation of § 21–28–4.01(A)(2)(a), the trial justice noted that the act "by defining what the penalties are as it relates to addicted and non-addicted persons in no way creates an additional element for the state to prove."

After the jury returned a guilty verdict on all three counts, defendant asserted again in a motion for arrest of judgment that the state had to prove drug dependency. He also filed a motion for a new trial. The trial justice denied both motions.

The defendant first contends that the act is unconstitutionally vague, making his conviction improper. On three separate occasions, defendant sought to have the trial and motion court interpret the act to require the state to prove drug dependency as an element of the offense. Citing the Legislature's differentiation in the severity of penalties for drug-dependent persons as opposed to nondrug-dependent persons, he argued strenuously that drug dependency or lack thereof is part of the corpus delicti and, accordingly, must be established by the state. He maintains that these numerous unsuccessful motions to challenge the act constitute reversible error. We do not agree.

■ "The due-process clause of the Fourteenth Amendment to the United States Constitution requires that criminal statutes set forth with reasonable clarity those acts that they proscribe." *In re Steven,* 510 A.2d 955, 958 (R.I.1986); *see also State v. Alegria,* 449 A.2d 131, 133 (R.I. 1982); *State v. Tweedie,* 444 A.2d 855, 857 (R.I.1982). The due process clause mandates that a criminal statute be declared void when it is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *." *Alegria,* 449 A.2d at 133 (quoting *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)).

■ We have previously held that the corpus delicti of an offense comprises two elements: a penally proscribed act or injury and the unlawfulness of some person in causing that injury. *State v. Halstead*, 414 A.2d 1138, 1143 (R.I.1980). In this case the act clearly sets out the elements necessary to obtain a conviction. In order to convict defendant, the state had to prove that (1) there was an unlawful delivery of a controlled substance and (2) the defendant caused the unlawful delivery. Section 21–28–4.01. The elements of the offense were clearly defined and therefore comport with due process requirements. The fact of defendant's drug dependency or nondrug dependency is clearly not conduct proscribed by the statute and hence not an element of the res gestae. Therefore defendant's argument that the statute is unconstitutionally vague is without merit.

Since there is no evidence of drug dependency, defendant also asserts that it was improper to charge him under § 21–28–4.01(A)(2)(a). He maintains rather that he should have been charged by indictment under § 21–28–4.01(A)(1).

■ The Supreme Court has held that if an act violates two statutes, the prosecutor may charge under either. *See United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755, 764 (1979). Thus the prosecutor is allowed the discretion to charge a defendant with an offense that carries a lesser penalty where two violations occur. A full and fair reading of the act makes evident that defendant could properly have been charged under § 21–28–4.01(A)(1) as a nondrug-dependent person accused of selling a schedule II controlled substance. *See State v. Young*, 519 A.2d 587, 588 (R.I.1987). However, the state's choice to charge defendant under § 21–28–4.01(A)(2)(a) with a maximum potential penalty of thirty years was clearly within the realm of the prosecutor's discretion. In accord with G.L.1956 (1981 Reenactment), §§ 12–12–1.1 and –1.2, we have held that when the felony is not punishable by death or life imprisonment, the state may choose to prosecute by information. *State v. Rawlinson*, 526 A.2d 1278, 1279 (R.I.1987); *State v. Bianco*, 501 A.2d 1183, 1184 (R.I.1985). Here the state properly charged defendant by information with a violation of § 21–28–4.01(A)(2)(a), thereby insulating defendant from life imprisonment. The defendant's contention that he should have been charged by indictment is without merit.

■ The defendant next argues that the state should have been sanctioned for failing to disclose Maynard's December 13, 1985 reports and for filing improper witness statements. In considering an alleged nondisclosure of discovery material in violation of Rule 16, a trial justice and this court on review will examine four factors: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *State v. Boucher*, 542 A.2d 236, 241 (R.I.1988) (quoting *State v. Coelho*, 454 A.2d 241, 245 (R.I.1982)). We shall not easily overturn a trial justice's determination in these matters. Since trial justices are in the best position to decide whether any harm resulted from alleged noncompliance with discovery norms, absent a clear abuse of discretion, their opinions will not be overturned. *Boucher*, 542 A.2d at 241; *Coelho*, 454 A.2d at 245.

The failure of the state to provide defendant with Maynard's December 13, 1985 reports does not justify reversal. There is no evidence of a deliberate attempt to mislead or delay defendant's discovery. *See State v. Lionberg*, 533 A.2d 1172, 1180 (R.I.1987) ("[w]ithout evidence to the contrary, this court will assume that nondisclosure is inadvertent rather than deliberate"); *State v. Concannon*, 457 A.2d 1350, 1353 (R.I.1983). The reports furnished throughout discovery were virtually identical to Maynard's testimony. Since defendant had already impeached Maynard's credibility by showing she had not signed each November report after preparation as she had originally testified, any further impeachment by the nondisclosed reports would have been duplicative. We are therefore of the opinion that the trial justice did not abuse his discretion by not

sanctioning the state for failing to provide defendant with Maynard's December 13, 1985 reports.

Similarly, we find no evidence that the failure in some instances to provide accurate witness statements was deliberate. In addition, the slight discrepancies that existed did not prejudice defendant since none of the witnesses observed the actual purchase of drugs. We therefore find that the trial justice acted with appropriate discretion in finding no sufficiently prejudicial violation of Rule 16 to justify dismissal.

The defendant also takes issue with the trial court's refusal to grant his motions to pass and dismiss based upon alleged prosecutorial misconduct. The defendant contends that certain prosecutorial comments unfairly prejudiced him. We do not agree.

When a defendant claims that alleged prejudicial remarks form the basis for a mistrial, the trial justice must assess the prejudicial impact of such statements. *State v. Brown,* 522 A.2d 208, 210 (R.I. 1987); *State v. Marrapese,* 116 R.I. 1, 7, 351 A.2d 95, 98 (1976). There is no one rule to decide whether a prosecutorial comment is prejudicial as a matter of law. *Brown,* 522 A.2d at 210–11; *State v. Conway,* 463 A.2d 1319, 1324 (R.I.1983); *State v. Collazo,* 446 A.2d 1006, 1010 (R.I.1982). Rather the trial justice must evaluate the probable effect of the prosecutorial comment by examining the remark in its factual context. The test essentially is "whether the prosecutorial comment * * * so inflames the passions of the jury as to prevent their calm and dispassionate examination of the evidence." *Brown,* 522 A.2d at 211.

After examining the statements made by the prosecutor, we feel they had an adequate factual basis in the evidence and were within the legitimate inferences that the jury could have drawn. *See Conway,* 463 A.2d at 1324; *State v. Parente,* 460 A.2d 430, 439 (R.I.1983); *State v. Scott,* 114 R.I. 132, 137, 330 A.2d 66, 70 (1974). We find no merit in defendant's contention and hold that the trial justice was not clearly wrong.

The defendant also maintains that he was not permitted to effectively cross-examine Maynard as guaranteed by the Sixth Amendment to the United States Constitution and article I, section 10, of the Rhode Island Constitution. He bases this argument on the fact that Maynard's December 13, 1985 reports were not disclosed prior to her testimony. He maintains that he could not therefore effectively cross-examine Maynard about her simultaneous preparation of the Operation Brown Eyes reports.

It is well settled in this state that it is within the trial justice's discretion to limit cross-examination once there has been sufficient cross-examination to satisfy defendant's right to confrontation. *State v. Burke,* 522 A.2d 725, 733 (R.I.1987); *State v. Edwards,* 478 A.2d 972, 974 (R.I.1984); *State v. Freeman,* 473 A.2d 1149, 1153 (R.I.1984). Should the trial justice choose to exercise this discretion and limit cross-examination, such discretion "will not be disturbed except for clear abuse, and then only when such abuse constitutes prejudicial error." *State v. Anthony,* 422 A.2d 921, 924 (R.I.1980) (citing *Burns v. Janes,* 121 R.I. 343, 350, 398 A.2d 1125, 1128–29 (1979); *State v. Sprague,* 113 R.I. 351, 364, 322 A.2d 36, 43 (1974); and *State v. Carraturo,* 112 R.I. 179, 189, 308 A.2d 828, 833 (1973)).

After examining the evidence, we are of the opinion that defendant was able to confront Maynard sufficiently on cross-examination. Relying on the extent of cross-examination otherwise permitted and the presence of evidence corroborating the testimony of the witness on material points, we find that the exclusion of such evidence was harmless beyond a reasonable doubt.

The defendant's final argument is that the trial justice's charge to the jury improperly prejudiced the jury against him. We do not agree. When a specific jury instruction is challenged, this court will view the charge in its entirety to determine its correctness. *State v. Tooher,* 542 A.2d 1084, 1088 (R.I.1988); *State v. Caruolo,* 524 A.2d 575, 582 (R.I.1987); *State v. Gordon,* 508

A.2d 1339, 1349 (R.I.1986) ("[w]e will not examine single sentences"). Our determination will be based upon how a reasonable juror would have interpreted the instruction. *Tooher*, 542 A.2d at 1088; *Gordon*, 508 A.2d at 1349; *State v. Long*, 488 A.2d 427, 434–35 (R.I.1985). Viewing them as a whole, we find that the trial justice's instructions accurately set out the applicable law. Therefore, we find no merit to the defendant's assertion that he was unfairly prejudiced by the charge to the jury.

For the foregoing reasons the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.